JONES *v.* STATE.

4296                                        171 S. W. 2d 298

Opinion delivered May 10, 1943.

*Steel & Edwardes*, for appellant.

*Guy E. Williams*, Attorney General, and *Earl N. Williams*, Assistant Attorney General, for appellee.

McFADDIN, J. Appellant, Louis Jones, was convicted of grand larceny for stealing two automobile tires. The facts disclosed by the record show that one morning in April, 1942, W. M. Brawnick found his automobile jacked up and two tires gone. A few days later he identified his tires at the police station and recovered them; and they were worth $25. The police had taken the appellant, Louis Jones, into custody; and he led the officers to the tires in the attic at his house and finally said that Henry Lollis had asked appellant to store the tires for Lollis. Appellant denied knowing that the tires were stolen. His story was, that one night Lollis had asked appellant to move some things for him; and appellant had stopped at a cafe and Lollis had put some articles in the car and had said "you take the things and store them for me and I will be over Friday evening and get them." Appellant claimed that a witness named Herman Ogburn was present and heard this conversation

between appellant and Lollis and that the witness would so testify. Appellant stated that when he reached home on that night, he learned for the first time that the articles in his car were automobile tires, and that he stored them in his attic where the police found them the next day or the day following.

Henry Lollis, after having pleaded guilty to larceny for stealing the tires, testified that he and appellant Jones stole the tires in a joint undertaking. Lollis said that about eleven o'clock at night he and appellant Jones stole the tires from the Brawnick car and that Jones watched while Lollis got the tires off the car and then Jones and Lollis rolled the tires to Jones' car and Jones took the tires home and later paid Lollis $5 and Jones kept the tires. There was other testimony in the record.

Appellant was arrested in April, 1942, and bound over to the grand jury and made bond for appearance in circuit court. On November 20, 1942, the formal information was filed in the circuit court; and on November 23 appellant entered a plea of not guilty, and the case was set for trial on November 30. On November 26 appellant had a subpoena issued to the sheriff of Miller county for Herman Ogburn; and on November 30 when the case was called for trial the sheriff made a return in open court that the witness could not be found in the county. Appellant then filed in open court that day, his motion for continuance alleging, *inter alia*, that "Herman Ogburn is now serving in the armed forces of the United States of America, and that he is beyond the jurisdiction of this court, and that his whereabouts are unknown to this defendant." The motion set up that Herman Ogburn would testify that Henry Lollis told the defendant that the property placed in the car was the property of Henry Lollis and that Henry Lollis did not tell appellant that any part of the property was stolen and that appellant was only keeping the property in storage for Henry Lollis. The motion for continuance asked that the cause be continued for *the duration of the war*.

The motion for continuance was overruled, and the appellant then filed on the same day "motion to take

depositions," seeking to have the depositions taken under §§ 3946-49 of Pope's Digest; and alleging that Herman Ogburn was in the United States Army absent from the state of Arkansas and that if time would be allowed to take his deposition the witness would testify as stated in the motion for continuance. The court overruled the motion to take deposition and the cause proceeded to trial resulting in the verdict of guilty as previously mentioned.

In the motion for new trial the defendant listed thirteen alleged errors of the trial court. Those now insisted on in this court are: 1. Overruling motion for continuance. 2. Overruling motion to take depositions. 3. The insufficiency of evidence. 4. The lack of testimony to corroborate the accomplice. 5. Identification of the property.

### 1. Motion for Continuance.

The appellant contends that the motion for continuance should have been granted; but with this contention we do not agree. In *Allison* v. *State,* 74 Ark. 444, 86 S. W. 409, Judge RIDDICK, speaking for the court, said: "It has often been decided that whether a case should be continued or not is generally a matter within the sound discretion of the trial court. Its refusal to grant a continuance is never a ground for a new trial unless it clearly appears to have been an abuse of such discretion, and manifestly operates as a denial of justice. It does not so appear in this case, and that contention must be overruled. *Jackson* v. *State,* 54 Ark. 243, 15 S. W. 607; *Price* v. *State,* 57 Ark. 165, 20 S. W. 1091."

In *Davis* v. *State,* 95 Ark. 555, 129 S. W. 530, Judge FRAUENTHAL, speaking for the court, said: "The application for continuance should have shown where these witnesses resided, and that it was probable that their testimony could be obtained in event the case was continued. It was also defective in not showing that the desired facts could not be proved by other witnesses. *Jackson* v. *State,* 54 Ark. 243, 15 S. W. 607."

This quotation is directly in point; the motion for continuance here stated that the witness, Herman Og-

burn, was in the armed forces of the United States and his whereabouts was unknown and the continuance was asked for the duration of the war. Neither did it recite that the desired facts could not be shown by other witnesses. The Soldiers' and Sailors' Civil Relief Act (U.S.C.A. Title 50, Appendix § 510), cannot be invoked by persons, not in the armed forces, who merely want to bring soldiers or sailors back to court to testify as witnesses. In the case of *Lassiter* v. *State,* 137 Ark. 273, 208 S. W. 21, the accused had asked for a continuance because two of his witnesses were in the United States Army in France in the first world war and a continuance was refused by the trial court and this court held there was no abuse in discretion.

## 2. Motion to Take Depositions

After the motion for continuance was overruled appellant then filed his motion to take the deposition of the absent witness, Herman Ogburn, under §§ 3946-49 of Pope's Digest; and appellant here complains of the action of the trial court in overruling the said motion. These sections of Pope's Digest are § 154 of the Criminal Code of 1869. In *Giboney* v. *Rogers,* 32 Ark. 462, and in *McDonald* v. *State,* 155 Ark. 142, 244 S. W. 20, these sections were invoked. In the first case, the result was successful, because the application was timely. In the second case, the depositions were suppressed, because the statute was not followed. The historical background of § 154 and its counterpart in other states would afford a very interesting study, but would unnecessarily prolong this opinion.

The defendant in the case at bar, in filing a motion to take depositions was seeking a continuance by indirection, because the granting of the motion would have gained for him the continuance that had been denied. In *Jenkins* v. *State,* 131 Ark. 312, 198 S. W. 877, the defendant asked for a continuance to take depositions and the question of diligence arose and was decided adversely to the appellant in that case: for the same reason—lack of due diligence—we hold against appellant here.

The appellant was arrested in April, 1942, and bound over to the circuit court. The formal information was filed on November 20 (the first day of the term). On November 23 he pleaded not guilty, and his case was set for trial for November 30. Did he diligently start to get his witnesses? No. He delayed until November 26 before even having a subpoena issued for the missing witness. Then did he pursue the subpoena diligently? No. He let it remain in the hands of the officer unserved until the morning of the trial. In 22 C. J. S, § 502, 800, in discussing the question of a continuance to take depositions it is stated, "the exercise of diligence is prerequisite to the grant of a continuance to take depositions of absent witnesses." And in discussing what is due diligence and whether the mere issuance of a subpoena would constitute due diligence, it is stated in 22 C. J. S., § 503, 807, that the accused cannot merely rest on issuing a subpoena, but "he must also make an effort to ascertain what progress is being made in the due service of the same; and, where the process has not been returned, must present a motion in court requiring the official to make such return so he can see what has been done."

And in 12 Am. Jur. 470, it is stated: "Where statutes authorize the taking of depositions, especially in cases providing that they may be used as evidence of unavailing witnesses, a continuance will nevertheless be refused if due diligence has not been used in the procurement of the depositions. . . . Diligence in attempting to procure testimony, to justify a continuance for failure to obtain it, must be continued and unremitting."

In one pleading on the day of trial, appellant asked that the case be continued for the duration, and stated he did not know where the absent witness could be located. Then when that motion was overruled he asked for a delay to take the deposition of the same witness. If the appellant had learned the location of the witness between the overruling of the motion for continuance and the filing of the motion to take depositions, then that very speedy acquisition of knowledge shows appellant's lack of diligence in failing to learn it sooner. The

right to take the deposition of an absent witness in a criminal case is a right that is granted to the accused when duly and seasonably applied for; but is a right which must be pursued with diligence: and that diligence is not shown in this case. See *Lassiter* v. *State,* 137 Ark. 273, 208 S. W. 21.

### 3. Sufficiency of Evidence.

The appellant challenges the sufficiency of the evidence, but from the facts as we have detailed them and from other facts on the record we conclude that the evidence was sufficient to submit the case to the jury and to support the conviction. The value of the property was clearly shown to be in excess of $10; the accomplice confessed and testified against appellant. The stolen property was found in the possession of the appellant and his explanations were conflicting. He first told the officers, in regard to the tires, that he (appellant) "had gotten them from these other two negroes and said he had been holding them all that time for them." Then appellant made another statement in regard to the tires leaving out anyone except Henry Lollis; and appellant told the officers that "he had been holding them all the time for Henry and wanted to get it corrected."

Proof of possession of stolen property standing alone raises no presumption of guilt and is not sufficient to sustain a conviction *Douglass* v. *State,* 91 Ark. 492, 121 S. W. 923; but the unexplained possession of property recently stolen constitutes legally sufficient evidence of larceny, *Green* v. *State,* 169 Ark. 330, 275 S. W. 652; and that possession of recently stolen property warrants a conviction where the explanation offered by the accused is not believed by the jury. *Davidson* v. *State,* 176 Ark. 1204, 4 S. W. 2d 908. For further cases in point see West's Digest, "Larceny," § 64. The defendant's possession of stolen property and the attendant circumstances in this case all justified the submission of the case to the jury and the verdict thereon.

### 4. Corroboration.

Appellant contends that the testimony of Henry Lollis as an accomplice was not corroborated in accord-

ance with the law; but with his contention we do not agree. In *Townsend* v. *State,* 148 Ark. 573, 231 S. W. 1, the finding of the stolen property in the possession of the accused was under the circumstances concerning the scarcity of meat at that time held to be sufficient corroboration of the accomplice to take the case to the jury. The finding of the stolen automobile tires in the possession of the accused at the time when automobile tires were highly precious puts this case at bar directly in point with the Townsend case previously cited. There are other Arkansas cases all holding that the finding of the stolen property in the possession of the accused along with other circumstances, is sufficient corroboration of the accomplice so as to carry the case to the jury. See *Aulls* v. *State,* 129 Ark. 583, 195 S. W. 1066; *White* v. *State,* 120 Ark. 631, 179 S. W. 160; *Mankey* v. *State,* 192 Ark. 901, 96 S. W. 2d 463.

## 5. Identification of Property.

The appellant assigns as error the fact that Brawnick identified and recovered his tires at the police station in the *absence of the accused appellant;* and appellant claims that this identification was hearsay because appellant was not at the police station, when the tires were identified; and appellant cites *Moore* v. *State,* 151 Ark. 515, 236 S. W. 846, as his authority. There is nothing to this contention of the appellant. The state offered Mr. Brawnick as a witness and Mr. Brawnick detailed to the jury that he saw his tires at the police station and identified them. The state was not proving any declaration made by Mr. Brawnick at the time he identified his tires, but was only having him detail the facts as to when and where he recovered his tires. If Brawnick had not been a witness in the case and the state had attempted to prove by some other witness that Brawnick told somebody the tires were his, then the hearsay rule would apply; but the state showed by Brawnick that the tires were his. The distinction between the case at bar and the case of *Moore* v. *State* is too clear to require any further discussion.

No error appearing, the case is affirmed.

HOLT, J., dissenting. It is my opinion that the trial court clearly abused its discretion in refusing to grant appellant's motion for permission to take the deposition of the witness, Herman Ogburn, whom it was alleged was absent from the state as a member of the armed forces. This motion was in proper form and should have been granted.

Appellant was charged with a felony, convicted, and adjudged to serve one year in the state penitentiary. The information upon which he was charged was filed November 20, 1942. Within six days thereafter he procured counsel and caused a subpoena to be issued, and placed in the hands of the sheriff, for the witness, Ogburn. This subpoena was returned by the sheriff November 30, 1942, with the notation that witness could not be found. On this same day, November 30, appellant moved for a continuance, which the court promptly denied; whereupon, appellant filed motion to be permitted to take the deposition of Ogburn, which the court also denied, and the appellant was forced to trial on that same day without benefit of Ogburn's testimony which was material to his defense and in no sense cumulative.

Appellant alleged that Ogburn would testify that he was present when Henry Lollis, the admitted thief, informed the appellant that he was going to move and asked this appellant to haul and store some things (including the tires in question) for him, and said that the things were his own property, and did not intimate that the tires were stolen. It was further alleged that Ogburn was the only witness who could testify on appellant's behalf as to this conversation.

That this testimony was material is apparent. It seems to me, on the record before us, that no argument is required to convince anyone that appellant has certainly exercised all the diligence required by any reasonable man in his efforts to procure the testimony of Ogburn.

The Constitution of this state guarantees to everyone charged with crime the right to have compulsory process to secure the attendance of witnesses in his be-

half. Section 10, art. 2, provides, "In all criminal prosecutions the accused shall have . . . compulsory process for obtaining witnesses in his favor and to be heard by himself and for counsel." In 22 C. J. S. 486, the text-writer says: "Since a person charged with crime is entitled to a reasonable opportunity to procure witnesses and evidence for his defense, it is the general rule that the absence of a material witness or evidence constitutes ground for a continuance in a proper case; and the right to delay until witnesses may be had at the trial also follows from the constitutional right of accused to compulsory process to secure the attendance of witnesses."

Section 3946, Pope's Digest, provides: "The court, or judge in vacation, or a judge of the Supreme Court, may authorize a defendant to take the deposition of a material witness where there are reasonable grounds to apprehend that, before the trial, the witness will die or become mentally incapable of giving testimony, or physically incapable of attending the trial, or becoming a non-resident of the state." And § 3949 provides: "Upon the death of the witness, or his becoming mentally incapable of testifying, or physically incapable of attending trial, or giving testimony, or a non-resident of the state and absent therefrom so that he could not be summoned, the deposition taken in pursuance of such order may be read as evidence; provided the ground of non-residence and absence from the state shall not be sufficient unless the defendant makes an affidavit that he has tried in good faith to procure the attendance of such witness and been unable to do so."

In *McDonald* v. *State*, 155 Ark. 142, 244 S. W. 20, this court said: "In *Giboney* v. *Rogers*, 32 Ark. 462, the court held that the above provision of the criminal code, which was then digested as § 1819 of Gantt's Digest, and which is the same as § 3112, Crawford & Moses' Digest, was not intended 'to so alter or amend the law as it then stood in Gould's Digest, *supra*, to prohibit the taking of depositions out of the state in criminal cases and to make a distinction in that regard between them and civil cases.'"

It must be remembered, too, that appellant, on the very day that the sheriff made his return, sought permission to obtain the testimony of the absent witness by deposition. There is nothing in this record that would indicate that this deposition could not have been taken and returned within the space of a few days, and certainly during the term. No harm could possibly have resulted to anyone by this short delay. Surely one's liberty should have thrown around it all the safeguards that the constitution and the statutes provide. It seems to me that no clearer case wherein there is a more apparent abuse of discretion, on the part of the court, could be shown than in that presented here. Accordingly, I think the judgment should be reversed and the cause remanded for a new trial.

Mr. Justice ROBINS concurs in this dissent.